UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Eduardo Ibarra Banuelas, | )    C/A No.: 4:08-2628-GRA-TER |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Report and Recommendation |
| | ) |
| Warden, Lee Correctional Institution, | ) |
| | ) |
| Respondent. | ) |
| _____ | ) |

     Petitioner, Eduardo Ibarra Banuelas ("petitioner/Banuelas"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on June 25, 2008. Respondent filed a motion for summary judgment on December 10, 2008, along with supporting memorandum. The undersigned issued an order filed December 12, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition on January 12, 2009.

## I. PROCEDURAL HISTORY

     There has been no significant opposition filed as to the procedural history as set out

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

by the respondent. In fact, petitioner states in his response to the motion for summary judgment that he "assents and accepts as true the historical data proffered by Respondent in Section I." (Response). Therefore, the undisputed procedural history as set out in respondent's memorandum will be discussed below.

Petitioner is presently confined at Lee Correctional Institution pursuant to Orders of Commitment from the Clerk of Court from Spartanburg County. At the November 2001 term, petitioner was indicted by the Spartanburg County Grand Jury for trafficking in cocaine (01-GS-42-3059). (Tr. 258).

Petitioner was initially represented by Thomas A. Boggs, Esquire, and tried before the Honorable J. Derham Cole and a jury on April 1-2, 2002. The case ended in mistrial after the jury hung. (Tr. 312-433). Petitioner was again represented by Boggs and tried before Judge Cole and a jury on May 30-31, 2002, but that case also ended in mistrial with a hung jury. Petitioner was tried a third time from April 29-30, 2003, before the Honorable Larry Patterson and a jury. He was represented by Jack Lynn, Esquire. This time, the jury convicted petitioner as charged, and Judge Patterson issued the minimum sentence of twenty-five (25) years in prison and a $200,000 fine. (Tr. 238, 259}.

Petitioner apparently attempted to file a notice of appeal long after the period for doing so had expired, and on September 9, 2003, the South Carolina Court of Appeals issued an order in which it dismissed the appeal as untimely. The Remittitur was sent on October 16, 2003. (Tr. 260-262).

Applicant next filed a pro se Application for Post-Conviction Relief on January 13, 2004 (04-CP-42-0081), in which he asserted the following issues:

1.      Counsel failed to file Direct Appeal.

2.      Applicant will be Amending Application after counsel is

        appointed. And Applicant receives Transcript.(sic.)

(Tr. 242). The State filed a Return dated August 30, 2004. (Tr. 253).

Through counsel David Collins, Jr., petitioner filed a 1st Amendment to the Application for Post Conviction Relief on January 18, 2005, in which he raised the following issues:

1.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to fully investigate the facts and circumstances surrounding the Defendant's charges and failed to properly prepare for trial.

2.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the drug evidence in this case.

3.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the wire tap evidence in this case.

4.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the drug evidence presented by the State at trial.

5.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the wire tap evidence presented by the State at trial.

6.      Ineffective Assistance of Counsel: Applicant's trial counsel failed to fail (sic.) a direct appeal of the Applicant's conviction despite Applicant's specific [sic] that his trial counsel file a direct appeal on his behalf.

3

(Tr. 246). Collins filed a 2nd Amendment on June 9, 2005, in which he raised the

following issues:

1. Ineffective Assistance of Counsel: Applicant's trial counsel failed to fully investigate the facts and circumstances surrounding the Defendant's charges and failed to properly prepare for trial.

2. Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the drug evidence in this case.

3. Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the wire tap evidence in this case.

4. Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the drug evidence presented by the State at trial.

5. Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the wire tap evidence presented by the State at trial.

6. Ineffective Assistance of Counsel: Applicant's trial counsel failed to fail (sic.) a direct appeal of the Applicant's conviction despite Applicant's specific [sic] that his trial counsel file a direct appeal on his behalf.

7. Ineffective Assistance of Counsel: Applicant's trial counsel failed to call witnesses who were necessary for the proper presentation of Applicant's defense at trial; specifically, Applicant's trial counsel failed to call Julie Rosario, a Spanish Interpreter, to testify at the trial of Applicant's case.

(Tr. 248).

Collins filed a 3rd Amendment on August 15, 2005, in which he raised the following

issues:

1. Ineffective Assistance of Counsel: Applicant's trial counsel failed to

fully investigate the facts and circumstances surrounding the Defendant's charges and failed to properly prepare for trial.

2. Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the drug evidence in this case.

3. Ineffective Assistance of Counsel: Applicant's trial counsel failed to move prior to trial to suppress the wire tap evidence in this case.

4. Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the drug evidence presented by the State at trial.

5. Ineffective Assistance of Counsel: Applicant's trial counsel failed to challenge the admissibility at trial of the wire tap evidence presented by the State at trial.

6. Ineffective Assistance of Counsel: Applicant's trial counsel failed to fail (sic) a direct appeal of the Applicant's conviction despite Applicant's specific [sic] that his trial counsel file a direct appeal on his behalf.

7. Ineffective Assistance of Counsel: Applicant's trial counsel failed to call witnesses who were necessary for the proper presentation of Applicant's defense at trial; specifically, Applicant's trial counsel failed to call Julie Rosario, a Spanish Interpreter, to testify at the trial of Applicant's case.

8. Ineffective Assistance of Counsel: Applicant's trial counsel elicited damaging evidence from the state's witnesses and made damaging statements to the jury during opening arguments.

9. Ineffective Assistance of Counsel: Applicant's trial counsel failed to object to the introduction of uncharged offenses.

10. Ineffective Assistance of Counsel: Applicant's trial counsel failed to submit a transcription of the audio tapes made by the Spartanburg County Sheriff's Office during the investigation of the crime's with which the applicant was charged.

11. Ineffective Assistance of Counsel: Applicant's trial counsel failed to

> request an appropriate jury charge related to the burden of proof and the attempted "burden shifting" by the State during this case.

(Tr. 250).

An evidentiary hearing in petitioner's PCR was held before the Honorable Doyet A. Early, III, on September 21, 2005. Petitioner was present and represented by counsel Collins. (Tr. 263-309). Petitioner called himself to testify at the hearing, the State called trial counsel. On December 20, 2006, Judge Early filed an Order of Dismissal with Prejudice in which he rejected petitioner's claims for relief. (Tr.432-441).

A timely notice of appeal was filed with the South Carolina Supreme Court from Judge Early's PCR order. Assistant Appellate Defender Katherine H. Hudgins of the South Carolina Office of Appellate Defense was appointed to represent petitioner in his PCR appeal. On May 9, 2007, Hudgins filed with the state supreme court a "no merit" Johnson Petition for Writ of Certiorari and Petition to be Relieved as Counsel, in which she asserted the following issues on behalf of petitioner:

1.  Did the PCR court err in refusing to find counsel ineffective for allowing the audio tape to be admitted into evidence without admitting the translated transcription?

2.  Did the PCR court err in finding a valid waiver of the right to appeal?

The State filed a letter return on May 14, 2007. Petitioner filed a "Pro se Response to Johnson Petition", received June 18, 2007, in which he raised the following issues:

1.  Did the PCR Court err in finding that trial counsel was not ineffective for allowing the audio tape to be admitted into evidence without admitting the translated transcription of the audio tape into evidence

6

also?

2.      Did the trial judge err in charging Petitioners jury that 'the hands of one are the hands of all' ? (sic)

3.      Did trial counsel provide ineffective assistance in his failure to subpoena Julie Rosario as a witness/interpreter for Petitioners second trial?

4.      Did trial counsel provide ineffective assistance by failing to challenge into the record of the proceeding the exclusion of Hispanics on Petitioners petit jury panel, thereby prejudicing Petitioner by the deprivation of his constitutional right to be tried by a jury of his peers?

5.      Did the PCR Court err in publishing, as a finding of fact and conclusion of law, that Petitioner knowingly and voluntarily waived his right to appeal?

The case was transferred to the South Carolina Court of Appeals by order dated December 19, 2001. On May 27, 2008, the South Carolina Court of Appeals issued an order in which it denied the <u>Johnson</u> petition and granted the motion to be relieved. The Remittitur was issued on June 12, 2008.

## II. PETITIONER'S GROUNDS FOR RELIEF

Petitioner filed his pro se Petition for Writ of habeas Corpus on July 25, 2008. (Doc. # 1). In his petition for habeas corpus, petitioner raises the following grounds, quoted verbatim:

Ground One:      Ineffective assistance of counsel violating the sixth and fourteenth amendments.

Supporting facts:      Trial counsel failed to fully investigate the facts and

|                     | circumstances surrounding the defendants charges and failed to properly prepare for trial. |
|---------------------|---------------------------------------------------------------------------------------------|
| Ground Two:         | Ineffective assistance of counsel sixth and fourteenth Amendment was violated. |
| Supporting Facts:   | Trial counsel failed to move prior to trial to suppress the wire tap evidence in this case. |
| Ground Three:       | Ineffective Assistance of counsel |
| Supporting acts:    | Failed to call witnesses who were necessary in translating English to Spanish. |

(Petition and attached memorandum).

### III. SUMMARY JUDGMENT

On December 10, 2008, the respondent filed a return and memorandum of law in support of his motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine

issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

Since Banuelos filed his petition after the effective date of the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review.").  Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must

10

determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

## V.   DISCUSSION AS TO PROCEDURAL BAR

### A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>  (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>  (B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)     An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)     A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the

validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts,  Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  Rose 455 U.S. at 515.


2.Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise

the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

<u>Reed v. Ross</u>, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

14

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4.  Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims

which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, <u>Coleman v. Thompson</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Clozza v. Murray</u>, 913 F.2d 1092 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 913 (1991); and <u>Clanton v. Muncy</u>, 845 F.2d 1238 (4th Cir. 1988), <u>cert. denied</u>, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray v. Carrier</u>, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

In the case of <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for

a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. See Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI.  ANALYSIS

### Ground One

In Ground One of the habeas petition, petitioner asserts that his counsel was ineffective for  failing to "fully investigate the facts and circumstances surrounding the defendants charges and failed to properly prepare for trial." (Petition).

Respondent first argues that this issue should be dismissed in that the claim is insufficient to state a claim for relief because petitioner does not specify exactly how his counsel failed to investigate and prepare. Second, respondent asserts that the PCR court did address and reject a claim that counsel was ineffective in failing to investigate and prepare, inasmuch as counsel did not call a state's witness, Julie Rosario, who translated the recording of the phone conversations and in-person dealings between the undercover officer, Rocky Correll, and petitioner.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal  prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  In the case of Strickland , supra, the United States Supreme

Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination . . . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

A review of the dismissal order from the PCR judge reveals he found the following with respect to this issue:

> The allegation that Mr. Lynn ("trial counsel") was ineffective for failing to investigate and present testimony and the transcription from Julie Rosario during this trial is without merit. Ms. Rosario is an interpreter who transcribed the contents of the audiotape into English and testified as a witness for the State during Applicant's prior trial on this indictment. Her testimony and translated transcript, which was entered into evidence during that trial, indicated that there were portions of the tape recording she could not hear. The State did not call Ms. Rosario as a witness or put her translated transcript into evidence at this trial. Officer Rocky Correll, who was a party to the conversation, testified and translated the content of the audiotape instead.
>
> At the PCR hearing, applicant testified that trial counsel failed to investigate and prepare for trial. Applicant claimed that trial counsel failed to meet with him and that they never discussed the charge, any defenses or witnesses. Applicant also testified that he asked trial counsel to talk with Ms. Rosario, but trial counsel failed to do so. According to Applicant, trial counsel was ineffective for failing [to] call Ms. Rosario as a witness and put translated transcript into evidence.
>
> This Court does not find Applicant's testimony to be credible. Trial counsel's

testimony is credible, and this Court affords it great weight. Trial counsel testified that he met with Applicant several times and reviewed the discovery and audiotapes with him. Trial counsel further stated that he had both transcripts from the previous trials and went over them with applicant. Trial counsel also testified that Applicant never asked him to contact Ms. Rosario. Regardless, trial counsel stated that his own interpreter had listened to the tape and agreed both that portions were inaudible and with Officer Correll's translations of the audible parts during the trial. According to trial counsel, he saw no reason to submit a transcript of the audiotape. Trial counsel explained that he knew Officer Correll would testify and identify himself and Applicant as the voices on the audiotape. Even if the tape had not existed, trial counsel explained that Officer Correll was free to testify about what was said since he was a party to the conversation.

This Court finds that trial counsel's representation was well within the standard of professional reasonableness required of a criminal defense attorney. Strickland v. Washington; Cherry v. State. Trial counsel investigated and was prepared. As stated above, trial counsel's testimony that Applicant did not request he contact Ms. Rosario is more credible than Applicant's trial counsel's assessment regarding the translated transcript was also reasonable.

This Court further finds that Applicant utterly failed to show a reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation. Johnson v. State. Even if Ms. Rosario had testified that portions of the tape were inaudible, as she did previously, such testimony would be merely cumulative to what the jury heard for themselves when they listened to the tape during this trial. Regardless, Officer Correll's testimony concerning what Applicant said to him during their phone conversation was proper. Since Applicant failed to prove both deficiency and prejudice, this allegation of ineffective assistance of trial counsel is denied and dismissed with prejudice.

(Tr. 437-438).

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, the historical

facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots v. Allsbrook, 785 f.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and Williams, supra.

The undersigned has reviewed the record and concludes that respondent's motion for summary judgment should be granted on this issue. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. Trial counsel testified that his own interpreter had listened to the tape and agreed both that portions were inaudible and with Officer Correll's translations of the audible parts during the trial. According to trial counsel, he saw no reason to submit a transcript of the audiotape. Trial counsel explained that he knew Officer Correll would testify and identify himself and petitioner as the voices on the audiotape. Even if the tape had not existed, trial counsel explained that Officer Correll was free to testify about what was said since he was a party to the conversation. Additionally, as the PCR court found, the jury was able to hear the audibility of the tape for itself and Officer Correll was properly allowed to testify and describe the conversations. Further, counsel raised the issue of inaudibility on cross of Officer Correll who admitted the quality of the tape was poor and there was trouble hearing everything being said. (Tr. 182). Petitioner did not submit any testimony from Ms. Rosario at the PCR hearing or submit a copy of the transcript. Petitioner did not identify the specific areas that were allegedly inaudible or where Officer Correll misinterpreted something or

related something that was not apparent from the tape at trial. Petitioner further did not explain why the existence of these allegedly inaudible areas would create a reasonable probability of a different result. Thus, petitioner has failed to show prejudice.

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Hill and Strickland and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The state court decisions did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); Williams, supra. Thus, the undersigned recommends that the respondent's motion for summary judgment be granted on this issue.


**Ground Two**

In Ground Two, petitioner asserts a claim for ineffective assistance of counsel arguing that trial counsel failed to move to suppress the wire tap evidence prior to trial.

Respondent argues that this ground should be dismissed as petitioner does not specify exactly how his counsel could have moved to suppress the evidence. Respondent further asserts that this issue is procedurally barred, as neither the appellate counsel nor petitioner asserted on PCR appeal this claim that counsel should have moved to suppress the wiretap

evidence. Furthermore, respondent argues that, in the alternative, the claim fails on the merits because the case did not involve a "wiretap" which is "of course when police surreptitiously listen to the phone calls of others. Here, we merely had police recording of phone calls the undercover officer was personally conducting with Petitioner, and a recording of the hidden transmitter the undercover officer wore while he made cell phone calls on the way to the transaction and while the transaction was taking place. Accordingly, counsel testified he saw no basis for suppressing it." (Memorandum).

First, the undersigned finds that this issue is procedurally barred in that the PCR court's Order of Dismissal does not address an issue with regard to a wiretap, and there was no motion made to amend the Order to address this issue. Additionally, liberally construing the petition, if the petitioner is arguing that trial counsel was ineffective for failure to make a motion to suppress the audiotape, the issue should be denied. A review of the PCR Order of Dismissal reveals the PCR judge found the following:

> The allegation that trial counsel was ineffective for failing to move to suppress the audiotape and the cocaine is also without merit. Applicant offered no evidence other than his own assertions. Trial counsel testified that there was no legal ground upon which to make a motion to suppress the tape since Officer Correll testified at trial.
> . . .
> This Court finds that Applicant failed to prove that trial counsel's representation was deficient in either respect. This Court also agrees with trial counsel's assessment that there were no legal grounds upon which to make such motions. . . . In addition, the audiotape was cumulative to Officer Cordell's[sic] testimony. Therefore, this Court also concludes that applicant failed to show prejudice.

(Tr. 438-439).

In conclusion, the undersigned finds that there was no constitutional violation denying effective assistance of counsel as alleged in Ground Two of petitioner's claim for the reasons set forth above. The undersigned finds that counsel met the reasonableness test of <u>Strickland</u>, <u>supra</u>. Certainly, petitioner has failed, assuming *arguendo* there was error, to show the result was fundamentally unfair or unreliable. Therefore, based on the above, ground two is without merit and is appropriately denied for habeas corpus consideration. Thus, it is recommended that the respondents' motion for summary judgment be granted on this issue.

**<u>Ground Three</u>**

In Ground Three, petitioner argues that counsel was ineffective for failing to "call witnesses who were necessary in translating English to Spanish." (Petition).

Respondent asserts that as this issue pertains to counsel failing to call Rosario as a witness, the claim fails for the same reasons they argued Ground One failed. As to any other claim with respect to this issue, the claim would be procedurally barred as it was not raised to or ruled on by the PCR court and would not have been preserved for PCR appeal.

As petitioner is attempting to again argue that counsel was ineffective for failing to call Rosario to testify at the hearing regarding her transcript and translation, the issue fails for the reasons set forth in Ground One above. As to any other issue with relation to counsel's ineffectiveness for failing to call a translator at trial, the issue is procedurally defaulted as it was not raised or ruled upon at PCR. Petitioner has failed to show any

prejudice with this regard in that he did not present any testimony from a translator at PCR and did not present any evidence as to what another translator would have been able to present at trial.


**Ground Four**

In Ground Four of his habeas petition, petitioner asserts ineffective assistance of counsel for failure to file a direct appeal after he was sentenced. (Petition). Respondent argues this issue should be dismissed in that there is support for the PCR's denial of this issue in the record that counsel both informed and consulted with petitioner about an appeal, but petitioner never asked for one. Respondent states that counsel put on the record at trial that he had consulted with petitioner on the issue of appeal.

A review of the transcript reveals that trial counsel testified that he discussed with petitioner the effect of an appeal. Trial counsel testified that he was never asked by petitioner to file an appeal and never told petitioner that he was going to file an appeal. In his response in opposition, petitioner asserts that his trial counsel told him he would have to pay another lawyer if he wanted to appeal, and prior to leaving the defense table after sentencing, trial counsel told him that he had ten days to file an appeal. Petitioner argues that he spoke little English at the time but that his attorney should have asked him "yes or no" if he wanted to file a direct appeal.

The right to effective assistance of counsel extends to direct appeal. <u>Pennsylvania v.</u>

Finley, 481 U.S. 551, 559, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The Strickland standard is used to evaluate whether counsel was constitutionally deficient for failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) and Frazier v. South Carolina, 430 F.3d 696, 704-705 (4th Cir.2005). "To establish a Sixth Amendment violation based upon counsel's failure to appeal, [the petitioner] must prove that (1) counsel was ineffective, and (2) a reasonable probability that, but for counsel's ineffectiveness, an appeal would have been filed." United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir.2000) (citing Roe, 528 U.S. at 477-83).

If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instructions to appeal. Roe, 528 U.S. at 478. In the absence of a direct instruction from a defendant to appeal, the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." Roe, 528 U.S. at 478.

If counsel fails to consult, the defendant may demonstrate prejudice by showing that a rational defendant would want to appeal. The defendant may do this by demonstrating either that (a) there were non-frivolous issues for appeal, or (b) he had adequately indicated his interest in appealing. The mere presence of non-frivolous issues to appeal is generally sufficient to satisfy the defendant's burden to show prejudice. Attempting to demonstrate prejudice based on a reasonably obvious interest in pursuing an appeal, however, necessitates an additional showing that, had the defendant received reasonable advice from counsel about

the appeal, he would have instructed counsel to file an appeal. <u>Frazier v. South Carolina</u>, 430

F.3d at 708-709 (internal citations and quotation marks omitted).

At the PCR hearing, petitioner testified that he asked his trial counsel about a direct

appeal but "he never told me what to do to get an appeal." (Tr. 288). Petitioner testified that

he attempted to file an appeal but "it was too late." (Tr. 288). When asked if trial counsel

had assisted him in filing an appeal if he thought the outcome would have been different,

petitioner testified "I just thought that was his duty and that he should have helped me with

the appeal." (Tr. 288). Petitioner also testified that he did not pay counsel to file an appeal

on his behalf but that when he "asked him about it. And he told me I had to do it on my

own." (Tr. 288).

At the PCR hearing, Mr. Jack Lynn, trial counsel, testified that he absolutely discussed

his right to appeal, told him that he would file a Notice of Intent of Appeal, which he was

required to do if he wanted him to do so, but that he would not represent him on an appeal.

Trial counsel also testified that counsel went into a separate room with petitioner and an

interpreter and explained to him about his rights and what his rights were but he did not hear

from petitioner until some 30 days later wanting a "copy of the transcript or something for

his PCR." (Tr. 296-297). Counsel testified that he told petitioner that he would file a Notice

of Intent to Appeal and that it is in his contract with petitioner, in English and Spanish, that

he would file a Notice of Intent to Appeal but that he did not do appellate work. Counsel also

stated that he told petitioner's family that he would file a Notice of Intent to Appeal, and he

had it ready but petitioner never requested counsel to file the Notice. Counsel testified that he asked petitioner "point blank" in English and Spanish and in the presence of his family but was never asked to file the Notice. (Tr. 298). Trial counsel also testified that Judge Patterson asked him if he had gone over the right to appeal with petitioner on the record. A review of the trial transcript reveals that Mr. Lynn stated on the record after sentencing that he had explained the right to appeal to petitioner and that he thought petitioner understood. (Tr. 239).

The PCR court found petitioner's testimony to be not credible, and the testimony of trial counsel to be credible. (Tr. (439-440). A review of the PCR court's order of dismissal reveals the following with regard to this issue:

> The allegation that trial counsel was ineffective for failing to file an appeal is also without merit. Applicant's testimony that he asked trial counsel about an appeal and was told he would have to do it on his own is not credible. Trial counsel's testimony that he had discussed an appeal with Applicant and told him he would file the Notice of Appeal for him if Applicant requested was credible. Moreover, trial counsel's testimony that Applicant never indicated to him that he wanted to appeal was also credible.

> Therefore, this Court finds that trial counsel consulted and advised Applicant concerning his appellate rights. Further, this Court concludes that Applicant knowingly and voluntarily failed to exercise his right to an appeal and that trial counsel was not required to file an appeal without being specifically asked to do so. Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029 (2000). Therefore, this Court finds that Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Strickland v. Washington. Accordingly, applicant's request for a review of his direct appeal issues pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974), is denied and dismissed with prejudice.

(Tr. 439-440).

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Hill</u> and <u>Strickland</u> and was not based upon an unreasonable determination of facts in light of the state court record, this ground is without merit. The undersigned concludes that petitioner fails to meet the standard in <u>Roe</u> because he has not shown that he reasonably demonstrated his desire to appeal to Mr. Lynn, and he has not stated nonfrivolous grounds for a direct appeal. The state court decision did not involve a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2); <u>Williams, supra</u>. Thus, the undersigned recommends that the respondent's motion for summary judgment be granted on this issue.

## VII.  CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (Doc. #17)  be GRANTED and petitioner's petition for Writ of Habeas Corpus denied, and this petition dismissed.

Respectfully submitted,


                                        s/Thomas E. Rogers, III
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

July 27, 2009
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**